JUDGE ENGELMAYER

14 CV 8980

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

IGNATI YUROV,

                Plaintiff,

-against-

THE CITY OF NEW YORK, New York City Police Department Officer, ("P.O.") THOMAS KELLY (Shield No. 10711), P.O. SEAN MCKINNON (Shield No. 9380) and, SUPERVISORY OFFICER RICHARD ROE (the Richard Roe being fictitious, as his true name and shield number is presently unknown), in their individual and official capacities,

                Defendants.
----------------------------------------------------------X

**COMPLAINT AND DEMAND FOR A JURY TRIAL**


RECEIVED NOV 12 2014 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff IGNATI YUROV, by his attorneys MARK C. TAYLOR of RANKIN & TAYLOR, PLLC and MICHAEL L. SPIEGEL, as and for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983.

2. Plaintiff IGNATI YUROV's rights were violated when officers of the New York City Police Department ("NYPD") unconstitutionally and without any legal basis arrested him on June 28, 2012 and July 12, 2012 while he was panhandling in Midtown Manhattan, in violation of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

3. Plaintiff seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

7. Plaintiff IGNATI YUROV is, and was at all times relevant to this action, a homeless man who primarily resides in the County and State of New York.

8. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force, as well as the employment of police officers, as said risks attach to the public consumers of the services provided by NYPD.

9. Defendants P.O. THOMAS KELLY (Shield No. 10711), P.O. SEAN MCKINNON (Shield No. 9380), and SUPERVISORY OFFICER RICHARD ROE (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The individual defendants are being sued herein in their individual and official capacities.

11. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

12. The true name and shield number of defendant SUPERVISORY OFFICER ROE is not currently known to the plaintiff.[1] However, he is an employee or agent of the NYPD. Accordingly, he is entitled to representation in this action by the New York City Law Department ("Law Department") upon his request, pursuant to New York State General Obligations Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officer as a defendant in an amended pleading once the true name and shield number of said defendant becomes known to plaintiff and (b) that the Law Department should immediately begin preparing his defense in this action.

## STATEMENT OF FACTS
### First Incident – June 28, 2012

13. On June 28, 2012, at approximately 6:34 p.m., Mr. YUROV was falsely arrested by P.O. THOMAS KELLY at or about the intersection of 7th Avenue and 35th Street in the County and State of New York.

14. Mr. YUROV was sitting next to a Starbucks located at 35th Street and 7th Avenue displaying a sign reading "Anything helps, God Bless."

---

[1] By identifying said defendants as "John Doe" and "Richard Roe," plaintiff is making no representations as to the gender of those defendants.

15. Mr. YUROV sat against the wall of the building with his legs folded inward such that he did not interfere with, or obstruct pedestrian traffic.

16. Mr. YUROV was approached by P.O. THOMAS KELLY, P.O. SEAN MCKINNON and SUPERVISORY OFFICER RICHARD ROE who handcuffed and arrested him.

17. The officers transported Mr. YUROV to the 24th Precinct and then to the Midtown Community Court.

18. P.O. KELLY swore to a false criminal court complaint alleging Mr. Yurov obstructed pedestrian traffic and charging Mr. YUROV with violation of New York Penal Law ("PL") § 240.20(5).

19. P.O. KELLY also incorrectly identified the location of the arrest, placing it three blocks to the south of the actual incident.

20. Mr. YUROV spent approximately 16 hours in Defendant's custody as the result of his arrest.

21. The charge against Mr. YUROV was dismissed on December 19, 2012.

### Second Incident – July 12, 2012

22. On July 12, 2012, at approximately 5:30 p.m., Mr. YUROV was sitting in front of a Starbucks, located at the intersection of 31st Street and 6th Avenue, in the county and state of New York.

23. Mr. YUROV was again displaying a sign that read "Anything helps, God Bless."

24. Again, Mr. YUROV was sitting against the wall of the building with his legs folded inward such that he did not substantially interfere with or obstruct pedestrian traffic.

25. Mr. YUROV was approached by P.O. SEAN MCKINNON, P.O. THOMAS KELLY, and SUPERVISORY OFFICER RICHARD ROE who handcuffed and arrested him.

26. The officers transported Mr. YUROV to the 24th Precinct and then to the Midtown Community Court.

27. Mr. YUROV was charged with disorderly conduct on the basis of a false criminal court complaint sworn by PO MCKINNON which inaccurately stated that Mr. YUROV was obstructing pedestrian traffic.

28. Mr. YUROV spent approximately 16 hours in Defendant's custody as the result of his arrest.

29. The charge against Mr. YUROV was dismissed on January 11, 2013.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

30. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

31. By their conduct and actions in falsely arresting plaintiff, arresting plaintiff in retaliation for protected activity, fabricating evidence against plaintiff, abusing the criminal process, and by failing to intercede to prevent the complained of conduct by defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

32. As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional

distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

### SECOND CLAIM
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

33. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

34. By failing to remedy the wrongs committed by his or her subordinates, in failing to properly train, screen, supervise, or discipline his or her subordinates, and by personally participating in the constitutional injuries set forth above, defendant SUPERVISORY OFFICER ROE caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

35. As a result of the foregoing, plaintiff was deprived of his liberty, experienced pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### THIRD CLAIM FOR RELIEF
### *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983
(Against the City of New York)

36. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

37. All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

38. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

39. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

40. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices or policies:

   a. Failing to train officers concerning the lawful scope and application of NYPL § 240.20, the state's disorderly conduct statute; and failing to discipline officers regarding same; and

   b. Encouraging or otherwise forcing homeless individuals to seek admission into homeless shelters, thereby increasing the frequency of police interactions with homeless individuals without regard to any determination of probable cause or reasonable suspicion;

   c. Retaliating against or taking other adverse action towards homeless persons who refuse to stay in homeless shelters or who state an intention to refuse shelter; and

41. The existence of the above-described unlawful de facto policy and/or well-settled and widespread custom and *practice of failing to train officers concerning the lawful scope and application of NYPL § 240.20 and failing to discipline officers regarding same* can

7

be inferred by the truthful allegation in the following civil rights cases filed against defendant CITY:

a. <u>Hardeman v. City of New York</u>, 11-CV-3424 (S.D.N.Y.) (officers repeatedly arrest woman for panhandling, falsely accusing her of disorderly conduct);

b. <u>Reshke v. City of New York</u>, 11-CV-2198 (S.D.N.Y.) (officers arrest dozens of participants in the 2010 Puerto Rican Day Parade in order to interrogate them about supposed gang activity; plaintiffs all charged with disorderly conduct when they were in line to participate in the Parade);

c. <u>Aviah v. City of New York</u>, 11-CV-1303 (E.D.N.Y.) (officers arrest plaintiff for disorderly conduct in response to plaintiff asking why he was getting a traffic ticket);

d. <u>Osterhoudt v. City of New York</u>, 10-CV-3173 (E.D.N.Y.) (officers arrest plaintiff for disorderly conduct by failure to disperse during a spontaneous, post-election street celebration where the officers' order was physically impossible to comply with);

e. <u>Askar v. City of New York</u>, 10-CV-1074 (E.D.N.Y.) (officers arrest 13-year old for disorderly conduct even though, by operation of law in New York State, persons of that age cannot be charged with disorderly conduct);

f. <u>Lotorto v. City of New York</u>, 10-CV-1223 (E.D.N.Y.) (officers arrest plaintiff for disorderly conduct in retaliation for his videotaping the arrests of other persons);

g. <u>Acevedo v. City of New York</u>, 10-CV-514 (S.D.N.Y.) (officers arrest dozens of participants in the 2009 Puerto Rican Day Parade in order to interrogate them

about supposed gang activity; plaintiffs all arrested and charged with disorderly conduct when they crossing the street after being instructed to do so by officers);

    h.    <u>Callaghan v. City of New York</u>, 09-CV-9611 (S.D.N.Y.) (officers routinely arrest bicyclists engaged in lawful expressive conduct and charge them with disorderly conduct in the months and years after the 2004 Republican National Convention);

    i.    <u>Taylor-Mickens v. City of New York</u>, 09-CV-7923 (S.D.N.Y.) (officers arrest plaintiff for disorderly conduct in retaliation for her filing multiple CCRB complaints inside the NYPD's 24th Precinct); and

42. The existence of the above-described unlawful de facto policy and/or well-settled and widespread custom and practice *of encouraging or otherwise forcing homeless individuals to seek admission into homeless shelters, thereby increasing the frequency of police interactions with homeless individuals without regard to any determination of probable cause or reasonable suspicion*, can be inferred by the following:

    a.    One of the stated policies of the New York City Department of Homeless Services is to "[t]o reduce the number of individuals living on City streets."[2]

    b.    To achieve that policy goal, NYPD officers and other CITY employees and agents are routinely instructed to approach homeless individuals on the street to ask if they live in a shelter and, if not, to encourage them to do so. This policy predictably creates more police interactions with homeless individuals than would otherwise occur without that policy.

---

[2] NYC Department of Homeless Services – About DHS, *available at* http://www.nyc.gov/html/dhs/html/about/about_dhs.shtml.

    c.       The CITY also encourages local civilians to call 311, a CITY-run hotline, to report homeless individuals who appear to be in need of shelter. As heralded in a CITY press release: "By calling 311 when an individual on the street appears to be in need of shelter or assistance, any New Yorker can dispatch a street outreach team to that person and help them move indoors from the street. Homeless Services relies every day on New Yorkers to be the City's eyes and ears. Each month, street outreach teams respond to approximately 500 calls from 311."[3]

    d.       As a result of this policy of pushing homeless individuals to seek shelter instead of sleeping outside, more adults and children slept in City-run homeless shelters in the year 2010 than in any year this century.[7] This is the direct result of increased interaction between CITY agents and homeless individuals.

134. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, former Commissioner Raymond E. Kelly and current Commissioner William Bratton.

135. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 31 above.

136. Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

---

[3] NYC Department of Homeless Services – Press Release, *Homeless Services Announces a 15 Percent Decline in Street Homelessness from 2010*, April 28, 2011, *available at* http://www.nyc.gov/html/dhs/html/press/pr042811.shtml.

## JURY DEMAND

43. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

*WHEREFORE*, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

    a.    That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation;

    b.    That he be awarded punitive damages against the individual defendants;

    c.    That he be compensated for attorneys' fees and the costs and disbursements of this action; and

    d.    For such other further and different relief as to the Court may seem just and proper.

Dated:    New York, New York
            November 10, 2014

Respectfully Submitted,

By: _____
Mark C. Taylor
Rankin & Taylor, PLLC
11 Park Place, Suite 914
New York, New York 10013
t: 212-226-4507

_____/s/_____
Michael L. Spiegel, Esq.
11 Park Place, Suite 914
New York, New York 10007
t: 212-587-8558

*Attorneys for the Plaintiff*

11